```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
DAVID FERNANDEZ, JIM AKASALA,
JOSEPH SCUTTS, ROBERT LONGO and
OSWALDO LEE, III, Individually and on
Behalf of All Others Similarly Situated,

                        Plaintiffs,
                                                             12 Civ. 7193 (PKC)
        -against-
                                                             MEMORANDUM
                                                             AND ORDER
WELLS FARGO BANK, N.A., WELLS
FARGO & COMPANY and WFC HOLDINGS
CORPORATION,

                        Defendant.
-----------------------------------------------------------x
JOSEPH SCUTTS, DAVID FERNANDEZ,
JIM AKASALA, ROBERT LONGO,
OSWALDO LEE, III and FARHAN HAROON,
Individually and on Behalf of All Others
Similarly Situated,

                        Plaintiffs,
                                                             12 Civ. 7194 (PKC)
        -against-

WACHOVIA CORP., WACHOVIA BANK
N.A., WELLS FARGO BANK, N.A., WELLS
FARGO & COMPANY and WFC HOLDINGS
CORPORATION,

                        Defendants.
-----------------------------------------------------------x
```

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7-9-13
```

P. KEVIN CASTEL, District Judge:

       Plaintiffs have filed two related actions on behalf of themselves and others similarly situated, asserting that their former employers violated the Fair Labor Standards Act (the "FLSA"), the New York Labor Law ("NYLL") and the Employee Retirement Income

Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Defendants move to partially dismiss the First Amended Complaint in both actions, arguing that plaintiffs fail to plausibly allege ERISA violations. (12 Civ. 7193, Docket # 29; 12 Civ. 7194, Docket # 27.)

For the reasons explained, the motion is granted in part and denied in part.

BACKGROUND.

David Fernandez, Jim Akasala, Joseph Scutts, Robert Longo and Oswaldo Lee, III are plaintiffs in both actions, and plaintiff Farhan Haroon brings claims against the Wachovia defendants only. They assert, among other things, that the defendants breached their fiduciary duties under ERISA by depriving them of certain benefits under their 401(k) plans and by failing to keep adequate records concerning employee entitlements under the plans. There is no dispute that the relevant 401(k) plans are employee benefit plans within the meaning of ERISA. (Def. Mem. at 1 n.2.)

According to the Scutts complaint, "Wachovia Corporation merged with and/or was acquired by Wells Fargo & Company" in December 2008. (Scutts Compl't ¶ 4.1.) In a footnote to their memorandum of law, defendants explain that Wachovia dissolved in October 2009, with Wells Fargo & Company becoming its successor and Wells Fargo Bank, N.A. the successor in interest to Wachovia Bank, N.A. (Def. Mem. at 1 n.1.) Although not expressly alleged, it appears that plaintiffs were employees of Wachovia who remained with the company after the transaction, at which point, they became employees of Wells Fargo. Plaintiffs were employed by Wachovia as "financial specialists" and, subsequently, by Wells Fargo as "personal bankers." (Fernandez Compl't ¶¶ 2.1-2.3; Scutts Compl't ¶¶ 2.1-2.3.)

In the Fernandez action, 12 Civ. 7193, plaintiffs bring claims directed toward the treatment of current and former non-exempt personal bankers at Wells Fargo. Personal bankers

work in customer service at retail-banking facilities, with tasks that include opening new accounts, taking loan applications and providing general assistance to customers. (Fernandez Compl't ¶¶ 4.9, 4.11.) They also are expected to generate new business. (Fernandez Compl't ¶¶ 4.12-4.13, 4.20.) For ERISA purposes, plaintiffs bring claims on behalf of a putative class of personal bankers covered by the Wells Fargo 401(k) plan who allegedly were denied full benefits for the number of hours that they actually worked. (Fernandez Compl't ¶ 3.10.)

In the Scutts action, 12 Civ. 7194, plaintiffs bring claims directed toward the treatment of former, non-exempt financial specialists at Wachovia. The Complaint alleges that in December 2008, Wells Fargo acquired Wachovia, which, it contends, had policies that violated the wage-and-hour rights of financial specialists by requiring them to perform uncompensated, off-the-clock work. (Scutts Compl't ¶¶ 4.1-4.2.) For ERISA purposes, plaintiffs bring claims on behalf of a putative class of financial specialists covered by the Wachovia 401(k) plan who were denied full benefits for the number of hours actually worked. (Scutts Compl't ¶ 3.9.)

In each complaint, the plaintiffs assert two ERISA claims. First, they allege that defendants failed to maintain employee records as required by ERISA, 29 U.S.C. § 1059(a)(1), thereby rendering it impossible to determine the benefit accrual rights of 401(k) plan participants. (Fernandez Compl't ¶¶ 8.22-8.26; Scutts Compl't ¶¶ 7.22) The plaintiffs "seek injunctive relief, and such other equitable relief," as required to remedy this alleged record-keeping failure. (Fernandez Compl't ¶ 8.25; Scutts Compl't ¶ 7.23.) Second, plaintiffs allege that the defendants were ERISA fiduciaries who were responsible for crediting employee compensation and the number of hours worked, but failed to do so. (Fernandez Compl't ¶¶ 8.28-8.30; Scutts Compl't ¶¶ 7.25-7.28.) According to the complaint, this amounted to a breach of

fiduciary duty under ERISA, and plaintiffs seek an injunction "requiring Wells Fargo to credit all members of the ERISA Class with Eligible Compensation . . . as well as any such other compensatory and equitable relief" that may be appropriate. (Fernandez Compl't ¶¶ 8.29-8.31; Scutts Compl't ¶¶ 7.27-7.29.)

The Complaints were filed on September 24, 2012. (12 Civ. 7193, Docket # 1; 12 Civ. 7194, Docket # 1.) In an Order following a pretrial conference, dated December 17, 2012, the Court granted plaintiffs leave to replead, stating: "The amended pleading will be considered plaintiffs' strongest and best for the purposes of determining whether any further leave should be granted." (12 Civ. 7193, Docket # 24; 12 Civ. 7194, Docket # 23.) The First Amended Complaint was filed on January 22, 2013. (12 Civ. 7193, Docket # 26; 12 Civ. 7194, Docket # 25.) On June 12, 2013, with the consent of the Court, plaintiffs filed a Second Amended Complaint, joining three additional plaintiffs: Robert Longo, Oswaldo Lee, and, in the Scutts action only, Farhan Haroon. (12 Civ. 7193, Docket # 59; 12 Civ. 7194, Docket # 52.) Each side consents to applying the pending motion to the newly asserted claims of the three newly added plaintiffs. (Docket # 60.)

RULE 12(B)(6) STANDARD.

To survive a motion to dismiss for failure to state a claim upon which relief can be granted, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In assessing a complaint, courts draw all reasonable inferences in favor of the non-movant. See In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007). Legal conclusions, however, are not entitled to any presumption of truth, and a court assessing the sufficiency of a complaint disregards them. Iqbal, 556 U.S. at 678.

Instead, the court must examine only the well-pleaded factual allegations, if any, "and then determine whether they plausibly give rise to an entitlement to relief." Id. at 679.

DISCUSSION.

### A. Because Plaintiffs' Breach of Fiduciary Duty Claims Should Have Been Brought Pursuant to Section 502(a)(1)(B), They Are Dismissed.

Defendants argue that the ERISA claims should be dismissed because they are brought pursuant to a catch-all remedial provision that permits a plaintiff to pursue equitable remedies. Instead, defendants assert, the claims should have been brought under the provision that allows plaintiffs to sue for benefits owed under a plan. Had plaintiffs brought their claims under the appropriate ERISA provision, defendants argue, those claims would be doomed for failure to exhaust.

In their ERISA claims, the Scutts and Fernandez plaintiffs seek relief pursuant to section 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), which states that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." The Supreme Court has characterized section 502(a)(3) as a "catchall" and "a safety net" that provides for "appropriate equitable relief" not otherwise available under ERISA. Varity Corp. v. Howe, 516 U.S. 489, 512 (1996).

Both the Supreme Court and Second Circuit have emphasized that section 502(a)(3) should not be used to recast claims for money damages into claims for equitable relief. "Almost invariably . . . suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for 'money damages,' as that phrase has traditionally been applied, since they seek no more than compensation for loss

resulting from the defendant's breach of legal duty." Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 210 (2002) (quotation marks omitted). A claim for money due under a contract cannot be brought as a claim for equitable relief under section 502(a)(3). Id.; accord Frommert v. Conkright, 433 F.3d 254, 270 (2d Cir. 2006) ("While the plaintiffs seek to expand the nature of their claim by couching it in equitable terms to allow relief under § 502(a)(3), the gravamen of this action remains a claim for monetary compensation and that, above all else, dictates the relief available.").

In contrast to the broader language of section 502(a)(3), ERISA section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), gives a plan participant the right of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Separately, section 502(a)(2), 29 § 1132(a)(2), "specifically provides a remedy for breaches of fiduciary duty with respect to the interpretation of plan documents and the payment of claims . . . ." Varity Corp., 516 U.S. at 512. The Supreme Court has contrasted this and other subsections of 502(a) against the broader "catchall" language of section 502(a)(3). Id. Frommert also concluded that when relief is available under section 502(a)(1)(B), "there is no need . . . to also allow equitable relief under § 502(a)(3)." 433 F.3d at 270. "This issue has been addressed by the Supreme Court, which has consistently disfavored the expansion of the availability of equitable relief where remedies at law are sufficient." Id.

In Biomed Pharmaceuticals, Inc. v. Oxford Health Plans (N.Y.), Inc., 775 F. Supp. 2d 730, 736 (S.D.N.Y. 2011), Judge Rakoff dismissed ERISA claims that sought declaratory and injunctive relief under section 502(a)(3), noting that the complaint failed "to indicate the specific relief it actually seeks . . . ." The complaint in that action alleged that

defendants unlawfully denied plaintiff's claim for benefits, an injury that could be remedied under section 502(a)(1)(B). Id. at 738. Biomed observed that the relief sought was "legal rather than equitable in nature as they may adequately be redressed by money damages," and that the section 502(a)(3) claims all went toward the plaintiff's denial of benefits. Id. at 737 (citing Varity Corp., 516 U.S. at 515).

As a remedy for the alleged breach of fiduciary duty in failing to plan credits for the full number of hours worked, the plaintiffs in Scutts seek "an injunction and/or declaratory judgment requiring Defendants to credit all members of the ERISA Class with Eligible Compensation under the Wachovia 401k Plan for all the past wages earned and/or hours of work performed by Plaintiffs and the Class Members, as well as any such other compensatory and equitable relief to which Plaintiffs and members of the ERISA Class may be entitled" under section 502(a)(3). (Scutts Compl't ¶ 7.29.) The Fernandez complaint seeks nearly identical relief, including "an injunction requiring Wells Fargo to credit all members of the ERISA Class with Eligible Compensation under the Wells Fargo 401k Plan for all the past and future overtime work by the ERISA Class Members, as well as any such other compensatory and equitable relief to which Plaintiffs and members of the ERISA Class may be entitled." (Fernandez Compl't ¶¶ 8.25, 8.31.)

Plaintiffs' allegations can be remedied only with a payment of money. The complaints appear to acknowledge as much by requesting "any such other compensatory and equitable relief" to which plaintiffs may be entitled. (Fernandez Compl't ¶ 8.31; Scutts Compl't ¶ 7.29 (emphasis added).) They respectively seek 401(k) credit for "all the past wages earned and/or hours of work performed" (Scutts Compl't ¶ 7.29) and "for all the past and future overtime work . . . ." (Fernandez Compl't ¶ 8.31.) The two complaints' fiduciary duty claims

seek "to compel the defendant to pay a sum of money," Great-West, 534 U.S. at 210, and their claims for compensation "dicate[ ] the relief available," Frommert, 433 F.3d at 270.

Plaintiffs argue that the mere payment of money does not necessarily strip a remedy of its equitable character, citing Mathews v. Chevron Corp., 362 F.3d 1172 (9th Cir. 2004), which applied section 502(a)(3) to a breach of fiduciary duty claim directed toward the administration of a benefit plan.[1] The Ninth Circuit affirmed an order of the district court that required a defendant to place (or instate) employees in a plan from which they had been unlawfully excluded. Id. at 1186. It noted that "[o]n its face, an order to modify plan records is not an award of monetary damages. More importantly, the relief granted by the district court here is also equitable in substance." Id. Instating plaintiffs to a specific plan "simply puts them in the position they would have been had [defendant] not breached its fiduciary duty," and any payment that arose from instatement was equitable in nature, not an award of money damages. Id. at 1186-87. Such relief was properly awarded under section 502(a)(3). Id. at 1185-87; see also Gerlach, 2005 WL 7692423, at *2-3 (relief may be available under section 502(a)(3) to compel payment of unpaid benefits) (citing Mathews). The reasoning of Mathews has been rejected elsewhere. See, e.g., Zipp v. World Mortgage Co., 632 F. Supp. 2d 1117, 1121-25 (M.D. Fla. 2009) (collecting cases); Coan v. Kaufman, 333 F. Supp. 2d 14, 26 (D. Conn. 2004) ("Requesting the intermediate step of reviving long-terminated funds solely for the purpose of

---

[1] Plaintiffs also assert that this Court should apply offensive, non-mutual collateral estoppel based upon the ruling of a court in a different case against Wells Fargo, Gerlach v. Wells Fargo & Co., 2005 WL 6792423 (N.D. Cal. June 13, 2005). Issue preclusion or collateral estoppel "means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." Schiro v. Farley, 510 U.S. 222, 232 (1994) (quotation marks omitted); see also Faulkner v. Nat'l Geographic Entrs., Inc., 409 F.3d 26, 37 (2d Cir. 2005) (reciting offensive collateral estoppel factors). Gerlach denied a motion to dismiss, in a dispute that turned heavily on interpretation of the phrase "certified compensation" in a pension plan. 2005 WL 6792423, at *2-3. The Court determined no issue of ultimate fact, the case involved none of these plaintiffs or Wachovia, and the ruling was issued more than three years before Wells Fargo acquired Wachovia. While Gerlach may have some precedential value, collateral estoppel plays no role in its application.

channeling funds from Defendants' bank accounts into [plaintiff's] pockets does not transform what is effectively a money damages request into equitable relief.").

The injuries alleged and the relief sought in plaintiffs' fiduciary duty claims differ from those asserted in Mathews. The Scutts and Fernandez complaints do not seek to change the status of any plan participant or amend the terms of a plan, but to compel the payment of additional funds under an existing plan. Unlike Mathews, these proposed payments are not incidental to a form of equitable relief – such as the instatement of participants into a certain plan – but the core relief sought. While framed as an injunction to remedy a breach of fiduciary duty, "the gravamen of this action remains a claim for money compensation and that, above all else, dictates the relief available." Frommert, 433 F.3d at 270. The text of section 502(a)(1)(B) – unlike section 502(a)(3) – expressly permits a plaintiff "to recover benefits" and to enforce or clarify rights under a plan. This is precisely the relief sought here. As a result, plaintiffs' claims should have been brought pursuant to section 502(a)(1)(B), not section 502(a)(3). Frommert, 433 F.3d at 270.

Defendants' motion is granted as to Count Four.

B. Defendants' Motion Is Denied as to Plaintiffs' Recordkeeping Claims.

Count Three of each complaint is labeled "Failure to Maintain Records in Violation of ERISA." They assert that ERISA requires an employer that sponsors a benefit plan to maintain records for each employee sufficient to determine benefits due to such employees. (Fernandez Compl't ¶ 8.22; Scutts Compl't ¶ 7.20) (citing 29 U.S.C. § 1059(a)(1)) Plaintiffs claim that the defendants failed to maintain records seek "injunctive relief and declaratory relief, and other such equitable relief as the Court deems just and proper" under section 502(a)(3).

(Scutts Compl't ¶ 7.23.) The Fernandez complaint uses nearly identical language. (Fernandez Compl't ¶ 8.25.)

In contrast to plaintiffs' fiduciary duty claims, the relief here is not necessarily directed toward payment of money damages. It could, for example, encompass prospective injunctive relief concerning defendants' recordkeeping practices. Unlike plaintiffs' other ERISA claim, there is no separate, more narrowly focused remedy provision that would necessarily provide relief directed to defendants' records maintenance. Defendants' have not adequately explained why this claim can be remedied only through the payment of money damages.

Because the complaints plausibly asserts that defendants' alleged recordkeeping defects may be remedied with equitable relief, defendants' motion to dismiss the claim is denied.

C. Plaintiffs Failed to Exhaust Their Breach of Fiduciary Duty Claims.

"ERISA requires both that employee benefit plans have reasonable claims procedures in place, and that plan participants avail themselves of these procedures before turning to litigation." Eastman Kodak Co. v. STWB, Inc., 452 F.3d 215, 219 (2d Cir. 2006) (citing 29 C.F.R. § 2560.503-1). "Unless a 'clear and positive showing' is made that it would be futile for the claimant to pursue her claim through the internal claims process, 'that remedy must be exhausted prior to the institution of litigation.'" Id. (quoting Jones v. UNUM Life Ins. Co. of Am., 223 F.3d 130, 140 (2d Cir. 2000)). The exhaustion requirement serves to:

> uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts; to provide a sufficiently clear record of administrative action if litigation should ensue; to assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo; to help reduce the number of frivolous lawsuits under ERISA; to promote the consistent treatment of claims for benefits; to provide a nonadversarial method of claims settlement; and to minimize the costs of claims settlement for all concerned.

Kirkendall v. Halliburton, Inc., 707 F.3d 173, 179 (2d Cir. 2013) (quoting Paese v. Hartford Life & Accident Ins. Co., 449 F.3d 435, 445 (2d Cir. 2006)).

ERISA's exhaustion requirement applies when a claim is plan-based, as opposed to one that alleges statutory violations. See Gray v. Briggs, 1998 WL 386177, at *7 (S.D.N.Y. July 7, 1998) (Cote, J.) ("[T]here is no exhaustion requirement in ERISA suits alleging a statutory violation rather than a denial of benefits.") (collecting cases); DeSilva v. N. Shore – Long Island Jewish Health Sys., Inc., 770 F. Supp. 2d 497, 536 (E.D.N.Y. Mar. 16, 2011) ("[W]here a plaintiff's claims are statutory-based rather than plan-based, the plaintiff need not satisfy the exhaustion requirement.").

The Wachovia Savings Plan was merged into the Wells Fargo & Company 401(k) Plan (the "Plan") on December 31, 2010. (Holland Dec. ¶ 7.) Defendants assert, and plaintiffs do not dispute, that the plaintiffs never filed administrative claims with the Plan's administrator, either at Wachovia or Wells Fargo. (Holland Dec. ¶ 6.) The Plan provides that its administrator "shall have sole discretionary authority to interpret and construe the terms of the Plan, to determine all factual and legal questions under the Plan, and to make any determinations required in the administration of the Plan." (Holland Dec. Ex. B. at 78.) The administrator has authority to "determine eligibility for, entitlement to, and the amount and form of benefits." (Holland Dec. Ex. B at 79.) The Plan gives participants a right to administratively challenge benefits determinations:

> If the Participant believes there is an error in his or her account or in a distribution, believes he or she is entitled to different benefits from the 401(k) Plan, or disagrees with any determination that has been made reflecting the Participant's benefits under the 401(k) Plan, the Participant (or the Participant's authorized representative) may present a claim in writing for a review. The Participant's claim must be filed within 60 days after the Participant first received the information on which the claim is based. The

> Participant's written claim should explain, as best he or she can, what the Participant wants and why the Participant believes he or she is entitled to it, and should include copies of any relevant documents.

(Holland Dec. Ex. B at E-II.1.) It also establishes an appeal procedure. (Holland Dec. Ex. B. at E-II.2.)

The complaints expressly acknowledge that the Plan grants defendants "discretionary authority, responsibility, and/or control with respect to the crediting of compensation and/or hours worked," and "have exercised actual discretionary authority . . . in determining . . . which hours would and would not be compensated or credited" under the Plan. (Scutts Compl't ¶¶ 7.26-7.27; Fernandez Compl't ¶¶ 8.28-8.29.) Thus, the complaints allege that the defendants failed to carry out their obligations under the plan, and any attendant liability arises due to defendants' non-compliance with the Plan, not a statutory violation. These claims are subject to the exhaustion requirement. Gray, 1998 WL 386177, at *7; DeSilva, 770 F. Supp. 2d at 536.

Plaintiffs counter that any attempt to exhaust would have been futile because their allegations amount to an assertion of bad faith. As noted, the Second Circuit requires "a 'clear and positive showing'" that exhaustion would be futile. Eastman Kodak, 452 F.3d at 219. Drawing every reasonable inference in plaintiffs' favor, the complaints do not plausibly assert bad faith on defendants, either explicitly or implicitly. Indeed, the allegations could plausibly be read to assert mere negligence on the part of defendants. They fall far short of a clear and positive showing of bad faith. Similarly, plaintiffs offer no evidence that could fortify their assertion of futility.[2]

---

[2] Defendants do not address the exhaustion requirement as applied to plaintiffs' recordkeeping claim. ERISA itself sets forth the recordkeeping requirement. 29 U.S.C. § 1059(a). Because the recordkeeping claim arises under ERISA, rather than the terms of the plan, the exhaustion requirement does not to apply.

Because the Plan has "reasonable claims procedures in place," and because the plaintiffs did not "avail themselves of these procedures before turning to litigation," the breach of fiduciary duty claim is dismissed for failure to exhaust. Eastman Kodak, 452 F.3d at 219.

D. The Court's Reference to Plan Text Does Not Require Conversion of This Motion into a Motion for Summary Judgment.

Although plaintiffs' ERISA claims turn heavily on the text and obligations of the Plan, they argue that this Court should not consider the Plan as it was submitted by defendants without converting the motion into one for summary judgment. Plaintiffs contend that the defendants have not come forward with statements that establish that the Plan annexed to the Holland Declaration is authentic. This argument is without merit.

A "'complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.'" Chambers v. Time Warner, Inc., 282 F.3d 147, 152 (2d Cir. 2002) (quoting Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co., 62 F.3d 69, 72 (2d Cir.1995) (per curiam)). "Where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010) (quoting Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006)). "However, 'even if a document is "integral" to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'" Id. (quoting Faulkner v. Beer, 463 F.3d 130, 134 (2d Cir. 2006)).

The Plan, as attached to the Holland Declaration, totals more than 300 pages, including three sets of amendments. (Opp. Mem. at 5.) Plaintiffs speculate that there may be "other pertinent amendments" that were not attached. (Id.) They also assert that the Plan is

dated for 2010, when their claims cover events running from 2006-2013. (Id.) They do not dispute that the Plan is integral to the complaints.

Plaintiffs' contention that the Plan as submitted to the Court is materially incomplete is wholly unsupported. They make no representations and have come forward with no evidence that invites a conclusion that the Plan as submitted is misleading or incomplete. The Court places no weight on their conclusory assertion in a memorandum of law. If plaintiffs have facts to support a claim that the defendants submitted a false or misleading version of the Plan, they were duty-bound to bring these facts to the Court's attention.

Moreover, to the limited extent that the Court relied on the Plan's text, it was to discuss plaintiffs' possible avenues for exhaustion, for which only the current claims and appeals procedures are relevant. Thus, plaintiffs' contention that every version of the Plan, running from 2006 to 2013, must be submitted is without merit.

Plaintiffs' unsupported challenge to the Plan's authenticity is without merit.

E. Leave to Amend Is Denied.

Rule 15(a)(2), Fed. R. Civ. P., provides that "[t]he court should freely give leave [to amend] when justice so requires." The standard, although liberal, allows motions for leave to amend to be denied where the court finds "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . futility of amendment, etc." Foman v. Davis, 371 U.S. 178, 182 (1962).

Here, the Court's scheduling order set a date for motions to amend, which passed on January 18, 2013. (12 Civ. 7193, Docket # 23; 12 Civ. 7194, Docket # 25.) Rule 15(a) must be read in conjunction with Rule 16(b)(3)(A), Fed. R. Civ. P., which provides that "[t]he

Case 1:12-cv-07193-PKC   Document 62   Filed 07/09/13   Page 15 of 16
-15-

scheduling order must limit the time to join other parties, [and] amend the pleadings . . . ." Rule 16(b)(4) provides that "[a] schedule may be modified only for good cause and with the judge's consent." See Presbyterian Church of Sudan v. Talisman Energy, Inc., 582 F.3d 244, 267 (2d Cir. 2009) ("Once the deadline for amendment in a scheduling order has passed, leave to amend may be denied 'where the moving party failed to establish good cause.'") (quoting Parker v. Columbia Picture Indus., 204 F.3d 326, 340 (2d Cir. 2000)). "[T]he primary consideration is whether the moving party can demonstrate diligence." Kassner v. 2d Ave. Delicatessen Inc., 496 F.3d 229, 244 (2d Cir. 2007).

As previously noted, prior to plaintiffs' filing of the First Amended Complaint, the Court expressly stated that "[t]he amended pleading will be considered plaintiffs' strongest and best for the purposes of determining whether any further leave should be granted." (12 Civ. 7193, Docket # 24; 12 Civ. 7194, Docket # 23.) The Court has since permitted an additional amendment to join three more plaintiffs. (12 Civ. 7193, Docket # 59; 12 Civ. 7194, Docket # 52.)

In a footnote to their opposition memo, plaintiffs request that, in the event the Court grants defendants' motion, they be given leave to amend the Complaint in order to reframe their claims under section 502(a)(3) and to expressly allege exhaustion futility. (Opp. Mem. at 12 n.14.) However, plaintiffs have already been granted two opportunities to adequately plead an ERISA claim. The First Amended Complaint was filed after a pretrial conference and with notice of defendants' likely arguments. (See Def. Letter of Dec. 6, 2012.) Plaintiffs thereafter filed a Second Amended Complaint to join additional plaintiffs. Plaintiffs have not stated what additional facts they could truthfully allege to avoid the exhaustion

requirement. Plaintiffs have failed to articulate good cause for permitting an additional amendment and have not indicated why such amendment would not be futile.

Leave to replead is denied.

CONCLUSION

For the reasons explained, the fourth cause of action in the above-captioned complaints is DISMISSED. The Clerk is directed to terminate the motions. (12 Civ. 7193, Docket # 29; 12 Civ. 7194, Docket # 27.)

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
      July 9, 2013